| | | |
|---|---|---|
| Lee Marshall and Pamela Fuller | : | CASES CONSOLIDATED |
| | : | |
| v. | : | No. 40 C.D. 2022 |
| | : | |
| Southeastern Pennsylvania Transportation Authority, New Jersey Transit and New Jersey Transit Corporation | : : : : | |
| | : | |
| Appeal of: New Jersey Transit and New Jersey Transit Corporation | : : | |
| | : | |
| New Jersey Transit and New Jersey Transit Corporation, | : : | |
| Appellants | : | |
| | : | |
| v. | : | No. 157 C.D. 2022 |
| | : | Argued: March 6, 2023 |
| Lee Marshall, Pamela Fuller, and Southeastern Pennsylvania Transportation Authority | : : : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE LORI A. DUMAS, Judge

OPINION BY
JUDGE DUMAS                                      FILED: August 4, 2023

New Jersey Transit and New Jersey Transit Corporation (collectively, NJ Transit) appeal from two orders entered by the Court of Common Pleas of Philadelphia County (trial court). The first order overruled NJ Transit's preliminary objections to the complaint filed by Lee Marshall and Pamela Fuller (collectively, Plaintiffs). The second order denied NJ Transit's motion for judgment on the pleadings. On appeal, NJ Transit contends that the trial court should have held that NJ Transit could invoke sovereign immunity. We reverse and remand with

instructions to dismiss the case.

## I. BACKGROUND[1]

On July 30, 2018, Plaintiffs, both New Jersey residents, were passengers on a NJ Transit bus in Philadelphia when it hit a bus operated by the Southeastern Pennsylvania Transportation Authority (SEPTA). Compl., 6/12/20, ¶¶ 1-6; *accord generally* Am. Compl., 1/27/21. Plaintiffs sued NJ Transit and SEPTA for negligence. *See* Am. Compl. Both Pennsylvania and New Jersey have a two-year statute of limitations for tort claims. Pls.' Mot. for Recons., 5/28/21, ¶ 11.

NJ Transit filed preliminary objections for lack of subject matter jurisdiction, which invoked sovereign immunity based on *Franchise Tax Board of California v. Hyatt*, 139 S. Ct. 1485 (2019) (*Hyatt III*). Prelim. Objs., 2/1/21, ¶¶ 7-8, 11, 29-31.[2] Plaintiffs filed a response, conceding that NJ Transit "is an arm of the state" but asserting that NJ Transit is not immune from suit in Pennsylvania. Resp. to Prelim. Objs., 2/12/21, ¶ 9. The trial court ultimately overruled NJ Transit's preliminary objections. Order, 6/24/21. NJ Transit moved for reconsideration or to

---

[1] In presenting the background, we note that in resolving preliminary objections, "we must . . . accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts." *Raynor v. D'Annunzio*, 243 A.3d 41, 52 (Pa. 2020) (cleaned up). We may reject "conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Freemore v. Dep't of Corr.*, 231 A.3d 33, 37 (Pa. Cmwlth. 2020) (*per curiam*) (citation omitted). The same standard applies in reviewing an order resolving a motion for judgment on the pleadings. *Cagey v. Commonwealth*, 179 A.3d 458, 463 n.2 (Pa. 2018).

[2] We are bound by decisions of the Supreme Court of the United States. *NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 303 (Pa. Super. 2012) (*NASDAQ*). Further, "[w]henever possible, Pennsylvania state courts follow the Third Circuit so that litigants do not improperly walk across the street to achieve a different result in federal court than would be obtained in state court." *Id.* (cleaned up). We may cite to Superior Court or non-precedential federal cases for their persuasive value, but we are not bound by such cases unless the doctrines of *res judicata* or judicial estoppel apply. *Commonwealth v. Monsanto Co.*, 269 A.3d 623, 653 n.20 (Pa. Cmwlth. 2021); *Register v. Longwood Ambulance Co.*, 751 A.2d 694, 699 n.2 (Pa. Cmwlth. 2000); *Bienert v. Bienert*, 168 A.3d 248, 255 (Pa. Super. 2017).

certify its order for interlocutory appeal, which the trial court denied. Order, 7/8/21. NJ Transit timely filed a petition for permission to appeal.[3]

Meanwhile, NJ Transit filed an answer to the complaint and moved for judgment on the pleadings with each invoking sovereign immunity. The trial court denied the motion, Order, 1/11/22, and NJ Transit timely appealed to this Court. The trial court did not order a Pa.R.A.P. 1925(b) statement. This Court granted NJ Transit's application to consolidate the separate appeals and stayed the underlying case. Order, 6/13/22.

In denying relief to NJ Transit, the trial court did not detail its reasoning. The trial court concisely stated that NJ Transit "had waived sovereign immunity for the commission of vehicular negligence and whatever defenses were available to [NJ Transit] under the applicable tort claims law were recognizable by the court and would be applied by it." Trial Ct. Op., 3/23/22, at 3.

## II. ISSUES

On appeal, NJ Transit raises three issues. First, NJ Transit claims that the orders at issue are appealable collateral orders. NJ Transit's Br. at 5. Second, NJ Transit asserts that it is entitled to sovereign immunity as an arm of New Jersey and, therefore, immune from being sued in Pennsylvania. *Id.* Third, NJ Transit

---

[3] Generally, an order overruling a preliminary objection is not an appealable order. *Commonwealth ex rel. Corbett v. Snyder*, 977 A.2d 28, 50 (Pa. Cmwlth. 2009). However, if a preliminary objection invokes sovereign immunity, then an order resolving such a preliminary objection may be an appealable collateral order. *Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 374 n.5 (Pa. 2021).

In any event, NJ Transit complied with Pa.R.A.P. 1311, which addresses interlocutory appeals by permission. NJ Transit requested the trial court to certify its order under 42 Pa.C.S. § 702, and NJ Transit timely filed a petition for permission to appeal. *See generally* Pa.R.A.P. 1311. NJ Transit incorrectly filed a petition for permission to appeal with the Superior Court, which ordered that the petition be treated as a notice of appeal, *New Jersey Transit v. Marshall* (Pa. Super., No. 77 EDM 2021, filed Sept. 15, 2021) (order), and transferred the appeal to this Court. *New Jersey Transit v. Marshall* (Pa. Super., No. 1796 EDA 2021, filed Jan. 21, 2022) (order).

contends that it did not waive sovereign immunity under the New Jersey Tort Claims Act (Tort Act), N.J.S.A. §§ 59:1-1 to :12-3. *Id.*

### III. DISCUSSION[4]

### A. Collateral Order Doctrine

In support of its first issue, NJ Transit argues that the issue of whether it may assert sovereign immunity is a question of law separable from and collateral to Plaintiffs' negligence claims. *Id.* at 18. NJ Transit reasons that sovereign immunity is a right too important to deny appellate review. *Id.* If appellate review is postponed until final judgment, NJ Transit contends it would lose the benefit of a right to invoke sovereign immunity. *Id.* at 18-19.[5]

The collateral order doctrine provides that an order is an appealable collateral order when "(1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost." *Brooks*, 259 A.3d at 370 (citation omitted).

For example, in *Brooks*, the plaintiff was injured while exiting the

---

[4] "The appealability of an order under the Pa.R.A.P. 313 collateral order doctrine presents a question of law, over which our standard of review is *de novo*, and our scope of review is plenary." *Brooks*, 259 A.3d at 365. NJ Transit, however, invoked sovereign immunity as a *demurrer* instead of a new matter. *See* Pa.R.Civ.P. 1030(a). Because Plaintiffs failed to challenge that procedural defect via preliminary objections to NJ Transit's preliminary objections, we will apply the preliminary objection standard of review. *See Sutton v. Bickell*, 220 A.3d 1027, 1035 n.4 (Pa. 2019). Further, we review an order resolving a motion for judgment on the pleadings to determine whether based on the facts pleaded, recovery is impossible under the law. *Yanakos v. UPMC*, 218 A.3d 1214, 1218 n.6 (Pa. 2019). Finally, the "way in which the laws of a foreign jurisdiction operate presents a question of law, which we review *de novo*. We may take judicial notice of New Jersey statutory provisions and reported judicial decisions." *Melmark, Inc. v. Schutt*, 206 A.3d 1096, 1105 (Pa. 2019) (cleaned up); *accord* 42 Pa.C.S. § 5327.

[5] Plaintiffs did not challenge NJ Transit's arguments regarding the collateral order doctrine.

Family Court of Philadelphia. *Id.* at 361. She sued the Family Court, which moved for summary judgment on the basis of sovereign immunity. *Id.* The trial court denied summary judgment, the Family Court appealed, this Court quashed as premature, and the Family Court appealed to our Supreme Court. *Id.* at 363-64. The *Brooks* Court reversed because the order was an appealable collateral order. *Id.* at 360-61.

In support, the *Brooks* Court reasoned that the issue of whether the Family Court could invoke sovereign immunity was a purely legal question separable from the underlying merits of the plaintiff's negligence claim. *Brooks*, 259 A.3d at 372. Further, because the right to a sovereign immunity defense "is deeply rooted in public policy, as it is both secured by the [Pennsylvania] Constitution" and statute, the *Brooks* Court held that the issue was too important to defer resolution until after final judgment. *Id.* Finally, our Supreme Court held that the Family Court's ability to invoke sovereign immunity as a defense would be lost if appellate review occurred after final judgment. *Id.* at 373-74. The *Brooks* Court added that the U.S. Supreme Court also held that such orders were immediately appealable as "collateral orders because the entitlement is *an immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 374 (emphasis in original and cleaned up).

Instantly, consistent with the *Brooks* Court's reasoning, we also hold that the trial court's orders overruling NJ Transit's preliminary objections and denying the motion for judgment on the pleadings are appealable collateral orders. *See id.* at 373-74. Like the Family Court in *Brooks*, the issue of whether NJ Transit can invoke sovereign immunity is a purely legal question separable from the

5

underlying merits of Plaintiffs' negligence claims. *See id.* at 372. To paraphrase the *Brooks* Court, undoubtedly whether NJ Transit has the right to invoke a defense of sovereign immunity in the courts of this Commonwealth implicates Pennsylvania's public policy at the very least. *See id.* As in *Brooks*, delaying review of the instant orders until after final judgment would impair NJ Transit's right to invoke sovereign immunity. *See id.* Because we conclude that we may exercise appellate review, we address NJ Transit's next issue.

## B. Sovereign Immunity Under *Hyatt III*

In support of its second issue, NJ Transit argues it cannot be sued in *other* states without its consent. NJ Transit's Br. at 20. In support, NJ Transit recounts the history of the Eleventh Amendment[6] and related caselaw, including *Hyatt III*. *Id.* at 20-31. Per NJ Transit, the *Hyatt III* Court held that states are immune "from private suits brought in the courts of other states" subject to two exceptions involving federal courts. *Id.* at 28-29 (cleaned up). NJ Transit argues Pennsylvania is obligated to recognize NJ Transit's sovereign immunity. *Id.* at 29-30. NJ Transit marshals several cases dismissing lawsuits on the basis of sovereign immunity and contends the trial court should have similarly dismissed this action. *Id.*

Plaintiffs counter that sovereign immunity does not prevent NJ Transit from being sued in Pennsylvania. Pls.' Br. at 9. In their view, sovereign immunity only means that any immunity NJ Transit has in New Jersey would also apply in Pennsylvania. *Id.* Plaintiffs assert that absent a statute prohibiting NJ Transit from being sued in Pennsylvania, Pennsylvania is the proper jurisdiction. *Id.* Plaintiffs distinguish *Hyatt III* on the basis that New Jersey's sovereign immunity has an

---

[6] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

6

exception for vehicular negligence, and thus, New Jersey consented to be sued. *Id.* at 10. Plaintiffs claim that NJ Transit's argument lacks any legal support because NJ Transit cited no cases involving a state that consented to be sued in another state. *Id.* at 14-18; *see also id.* at 22 (discussing *Laconis v. Burlington Cnty. Bridge Comm'n*, 583 A.2d 1219 (Pa. Super. 1990)).

Initially, whether sovereign immunity applies is a question of law. *Brooks*, 259 A.3d at 372. Generally, sovereign immunity forecloses lawsuits against government entities. *Id.* at 372-73.[7] New Jersey defines sovereign immunity similarly. *NL Indus., Inc. v. State*, 156 A.3d 1043, 1052-53 (N.J. 2017). For example, under New Jersey law, NJ Transit is a government entity that can invoke sovereign immunity. *See* Resp. to Prelim. Objs. ¶ 9 (conceding NJ Transit is an arm of New

---

[7] The doctrine is not absolute. For example, sovereign immunity does not necessarily apply when the suit is between (a) political subdivisions of one state, or (b) a private citizen of one state and another state's municipality. *Galindo v. City of Flagstaff*, 452 P.3d 1185, 1187 n.2 (Utah 2019) (recognizing, as well, that "sovereign immunity does not flow from the Eleventh Amendment"); *City of College Park v. Clayton Cnty.*, 830 S.E.2d 179, 187 (Ga. 2019). As discussed below, sovereign immunity may be waived, *e.g.*, a sovereign could consent to be sued by legislative act or some other affirmative conduct.

We acknowledge that our Supreme Court stated that "[s]overeign immunity is an absolute defense that is not waivable," despite explicitly referencing various legislative waivers of sovereign immunity. *Brooks*, 259 A.3d at 371. Subsequently, a few months later, in resolving an issue of original jurisdiction, our Supreme Court commented, in *dicta*, that "Sovereign Immunity is in the nature of an affirmative defense; (a) it does not go to jurisdiction and (b) it can be waived." *Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 400 n.10 (Pa. 2021) (quoting *Chem. Nat. Res., Inc. v. Republic of Venezuela*, 215 A.2d 864, 867 (Pa. 1966)).

To the extent that our Supreme Court's jurisprudence appears contradictory, we need not address any apparent tension. *See Gibraltar Rock, Inc. v. Dep't of Env't Prot.*, 286 A.3d 713, 725 (Pa. 2022) (cautioning this Court from *sua sponte* raising issues). Regardless of any tension, in *Hyatt III*, the High Court summarily rejected an argument that the sovereign entity "waived its immunity. The [entity] has raised an immunity-based argument from this suit's inception . . . ." *Hyatt III*, 139 S. Ct. at 1491 n.1. In other words, despite holding that the entity has interstate sovereign immunity, the High Court implied that the entity could potentially waive its immunity by not timely invoking it. *See id.*; *Fin. Oversight & Mgmt. Bd. for P.R. v. Centro de Periodismo Investigativo, Inc.*, 143 S. Ct. 1176, 1183, 1185 (2023) (explaining that the board had sovereign immunity but that the board could elect to waive its immunity).

7

Jersey); *Flamer v. N.J. Transit Bus Operations, Inc.*, 607 A.2d 260, 262 (Pa. Super. 1992) (recognizing the defendant is "a public entity of the state of New Jersey and an alter ego of that state" subject to the Tort Act (citations omitted)).[8]

The High Court explained that the "States' sovereign immunity is a historically rooted principle embedded in the text and structure of the [U.S.] Constitution." *Hyatt III*, 139 S. Ct. at 1499. The *Hyatt III* Court reasoned that although not "spelled out in the Constitution," sovereign immunity—like judicial review, executive privilege, and executive immunity—is "nevertheless implicit in

_____

[8] *Accord Maison v. N.J. Transit Corp.*, 245 A.3d 536, 546-48 (N.J. 2021) (explaining that public entities, like NJ Transit, may be held liable for negligence subject to the Tort Act's limitations); *Ross v. Transp. of N.J.*, 553 A.2d 12, 18 (N.J. 1989) (holding the bus division of NJ Transit is a public entity subject to the Tort Act); *Roe by M.J. v. N.J. Transit Rail Operations, Inc.*, 721 A.2d 302, 305 (N.J. Super. Ct. App. Div. 1998) (holding, "NJ Transit is a public entity entitled to the protection of the Tort Claims Act" (citation omitted)); *Karns v. Shanahan*, 879 F.3d 504, 519 (3d. Cir. 2018) (concluding NJ Transit was an "arm of the state" for Eleventh Amendment immunity). *Cf. Galette v. NJ Transit*, 293 A.3d 649, 652 (Pa. Super. 2023) (stating the plaintiff opposed NJ Transit's contention that it was an arm of New Jersey that could invoke sovereign immunity), *appeal filed* (Pa., No. 204 EAL 2023, filed June 28, 2023).

In contrast, Pennsylvania courts have differed on whether SEPTA is entitled to sovereign immunity. Our Supreme Court reasoned that because SEPTA is not a Pennsylvania government entity, SEPTA cannot invoke Eleventh Amendment sovereign immunity. *Goldman v. SE Pa. Transp. Auth.*, 57 A.3d 1154, 1160 (Pa. 2012). In *Goldman*, which predates *Hyatt II* and *Hyatt III*, the Pennsylvania Supreme Court considered whether SEPTA could invoke Eleventh Amendment immunity in a state lawsuit filed under federal law. *Goldman*, 57 A.3d at 1159-60. The *Goldman* Court noted that because the U.S. Supreme Court held that "states have sovereign immunity in their own courts from suits brought by private individuals under federal law," the issue before the Court was whether SEPTA was an arm of the Commonwealth. *Id.* at 1162. Unlike the state suit under federal law in *Goldman*, the instant suit raises claims under Pennsylvania common law, *i.e.*, negligence. The *Goldman* Court also noted that the appellants waived an argument as to whether SEPTA was entitled to invoke the Sovereign Immunity Act. *Id.* at 1165 n.9. This Court, however, has frequently held that SEPTA is entitled to invoke sovereign immunity under the Sovereign Immunity Act. *Compare id.* at 1183 (observing that "SEPTA has been designated by the legislature of the Commonwealth as a distinct legal entity with the power to sue and be sued in its own capacity"), *with, e.g.*, *Knox v. SEPTA*, 81 A.3d 1016, 1022 (Pa. Cmwlth. 2013) (distinguishing *Goldman* in holding that SEPTA may invoke sovereign immunity). We need not reconcile *Goldman* and *Knox*, as the issue before this Court is whether Pennsylvania must recognize NJ Transit's interstate sovereign immunity under *Hyatt III*. *See Gibraltar Rock*, 286 A.3d at 725.

8

[the U.S. Constitution's] structure and supported by historical practice." *Id.* at 1498-99.[9] To provide context, we briefly discuss *Franchise Tax Board of California v. Hyatt*, 538 U.S. 488 (2003) (*Hyatt I*), *Franchise Tax Board of California v. Hyatt*, 578 U.S. 171 (2016) (*Hyatt II*), and *Hyatt III*.

In the *Hyatt* cases, the plaintiff, a private party, had sued a California agency in Nevada state court for various torts. *Hyatt III*, 139 S. Ct. at 1491. The California agency countered that under the Full Faith and Credit Clause of the U.S. Constitution, Nevada must recognize and apply a California law that immunized the California agency from suit. *Id.* The Nevada Supreme Court declined to apply that California law, and it instead applied Nevada law to resolve the scope of the California agency's immunity. *Id.* Subject to two qualifications, the U.S. Supreme Court affirmed, "holding that the Full Faith and Credit Clause did not prohibit

---

[9] Pennsylvania has similarly concluded that its sovereign immunity is grounded in common law in addition to statute. *See* 1 Pa.C.S. § 2310; 42 Pa.C.S. §§ 8521-8527 (Sovereign Immunity Act); *Mayle v. Pa. Dep't of Highways*, 388 A.2d 709, 719 (Pa. 1978). This conclusion buttresses the High Court's observation that because "the States considered themselves fully sovereign nations" prior to the drafting and ratification of the U.S. Constitution, the sovereign immunity doctrine is implicitly woven into the U.S. Constitution. *Hyatt III*, 139 S. Ct. at 1493; *Alden v. Maine*, 527 U.S. 706, 715-16 (1999).

We add that the Sovereign Immunity Act appears to recognize that Eleventh Amendment immunity applies to federal suits or, as appropriate, state suits under federal law. 42 Pa.C.S. § 8521(b); *Goldman*, 57 A.3d at 1160. Federal courts have also suggested that Eleventh Amendment immunity is limited to federal suits. *See PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2262 (2021) (explaining that when "a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action" (citation omitted)); *Waterfront Comm'n of New York Harbor v. Governor of New Jersey*, 961 F.3d 234, 238 (3d. Cir. 2020) (stating "the Eleventh Amendment expressly protects a State from federal suits by citizens of another State or country"); *see generally* 1 Treatise on Const. L. § 2.12(b)(v) ("The Eleventh Amendment, and the broader state sovereign immunity that the Eleventh Amendment reflects, bars federal court relief that, but for the Eleventh Amendment, a federal court could grant."); William Baude & Stephen E. Sachs, *The Misunderstood Eleventh Amendment*, 169 U. Pa. L. Rev. 609, 623, 650 (2021) (same). *But cf. Galette*, 293 A.3d at 656-57 (invoking the Eleventh Amendment in resolving whether NJ Transit may invoke sovereign immunity). Our Supreme Court may resolve any division between the intermediate appellate courts. *See generally Holland v. Marcy*, 883 A.2d 449, 450 (Pa. 2005).

9

Nevada from applying its own immunity law to the case." *Id.* (citing *Hyatt I*, 538 U.S. at 498-99).[10]

Subsequently, following a Nevada state court trial, a jury found the California agency liable and awarded significant damages. *Hyatt III*, 139 S. Ct. at 1491. The California agency appealed, and the Nevada Supreme Court rejected most of the damages but affirmed a one million dollar judgment on one of the counts. *Id.* In relevant part, although the Nevada Supreme Court "recognized that tort liability for Nevada state agencies was capped at $50,000 under state law, it nonetheless held that Nevada public policy precluded it from applying that limitation to the California agency in this case." *Id.* In other words, the California agency was liable for the full amount notwithstanding a Nevada law capping damages for Nevada state agencies. *Id.* The *Hyatt II* Court "reversed, holding that the Full Faith and Credit Clause required Nevada courts to grant the [California agency] the same immunity that Nevada agencies enjoy," *i.e.*, the damages cap that applied to Nevada agencies would also apply to the California agency. *Id.* (citing *Hyatt II*, 578 U.S. at 178-80).[11]

---

[10] The first qualification was that the Full Faith and Credit Clause did "not require one State to apply another State's law that violates its own legitimate public policy." *Hyatt II*, 578 U.S. at 177 (cleaned up). The second qualification was that Nevada's exercise of its choice-of-law principles in invoking Nevada law, "did not exhibit a policy of hostility to the public Acts of a sister State." *Id.* (cleaned up) (noting Nevada's reliance on its own sovereign immunity principles).

[11] In reaching that holding, the *Hyatt II* Court emphasized that it was not endorsing a "balancing-of-interests approach to conflicts of law under the Full Faith and Credit Clause," as "a state need not substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." *Hyatt II*, 578 U.S. at 179 (cleaned up). The *Hyatt II* Court reasoned, however, that the U.S. Constitution does not permit Nevada to disregard its own law and impose damages against a California agency "that are greater than it could award against" a Nevada agency "in similar circumstances." *Id.* at 176, 180. In doing so, the *Hyatt II* Court explained, Nevada failed to give a "healthy regard" to California's sovereign status. *Id.* at 179. *Cf. Galette*, 293 A.3d at 656-57 (applying Pennsylvania law to resolve NJ Transit's sovereign status). Nevada's lack of regard reflected a "constitutionally impermissible" "hostility" to California's law immunizing its agency from suit. *Hyatt II*, 578 U.S. at 179.

10

In sum, *Hyatt I* stood for the qualified proposition that the Full Faith and Credit Clause did not obligate one state to recognize another state's sovereign immunity. *Hyatt III*, 139 S. Ct. at 1491. *Hyatt II* held that the Full Faith and Credit Clause bars one state from treating another state's sovereigns, *i.e.*, agencies treated as arms of the state, differently from its own sovereigns. *Hyatt II*, 578 U.S. at 176, 180. Both *Hyatt I* and *II* addressed the state's exercise of comity in whether to recognize another state's sovereign immunity.[12]

Prior to *Hyatt III*, Pennsylvania state courts similarly relied on comity in resolving whether to recognize New Jersey's sovereign immunity. For example, in *Flamer v. New Jersey Transit Bus Operations, Inc.*, 607 A.2d 260 (Pa. Super. 1992), two Pennsylvania residents were injured on a NJ Transit bus in Camden, New Jersey. *Flamer*, 607 A.2d at 261.[13] The *Flamer* Court recognized that NJ Transit was an arm of New Jersey that could invoke sovereign immunity. *Id.* at 262, 265 n.4. The Court exercised comity to recognize that New Jersey's Tort Act was not repugnant to Pennsylvania's public policy. *Id.* at 263-64. Upon applying the Tort Act, the Court agreed that NJ Transit could not be sued in Pennsylvania. *Id.* at 265.[14]

---

[12] "Comity refers to the principle that one state will give effect to laws and judicial decisions of another state out of deference and mutual respect, rather than out of duty." *Neyman v. Buckley*, 153 A.3d 1010, 1017 (Pa. Super. 2016) (cleaned up).

[13] The *Flamer* plaintiffs sued NJ Transit in Pennsylvania state court, and the trial court agreed with NJ Transit's position that it was immune from being sued in Pennsylvania under the Tort Act. *Flamer*, 607 A.2d at 261; *see also Ross*, 553 A.2d at 18 (explaining that New Jersey Transit Bus Operations, Inc., is a public entity subject to the Tort Act). On appeal, the plaintiffs argued that because New Jersey's Tort Act violates Pennsylvania's public policy, Pennsylvania should not recognize the Tort Act under the Full Faith and Credit Clause. *Flamer*, 607 A.2d at 262. *Cf. Hyatt III*, 139 S. Ct. at 1491. One of the plaintiffs also argued that suit should remain in Pennsylvania because she failed to comply with the Tort Act's notice requirements and there was no other forum in which she could file suit. *Flamer*, 607 A.2d at 265 n.4. The *Flamer* Court rejected both arguments, *infra*.

[14] *Contra Galette*, 293 A.3d at 654-56 (applying Pennsylvania jurisprudence to hold NJ Transit is not an arm of the state). We add that the Superior Court also followed *Flamer* in

11

In contrast, in *Laconis*, the plaintiff (a Pennsylvania resident) was injured while driving on a bridge linking Pennsylvania and New Jersey, which was operated by the defendant bridge commission. *Laconis*, 583 A.2d at 1220. Specifically, the plaintiff's accident occurred on a Pennsylvania-owned highway "located immediately after" the bridge. *Id.* The defendant argued that Pennsylvania should have applied the Full Faith and Credit Clause to recognize the Tort Act, under which the commission was immune. *Id.* at 1221. The *Laconis* Court disagreed, reasoning that under pre-*Hyatt III* caselaw, the issue of "whether one state is required to accord sovereign immunity in its courts to another state is purely a question of comity." *Id.* Citing various factors, the *Laconis* Court held that "principles of comity do not require us to apply the New Jersey sovereign immunity statute," and thus, the defendant could not invoke immunity. *Id.* at 1222-23. These Pennsylvania cases stand for the proposition that prior to *Hyatt III*, states could apply comity principles and elect whether to recognize New Jersey's sovereign immunity under the Tort Act. *See Laconis*, 583 A.2d at 1222-23; *Flamer*, 607 A.2d at 263-64; *Astorino*, 912 A.2d at 310. No longer.

In *Hyatt III*, the U.S. Supreme Court resolved a more fundamental question: whether the U.S. "Constitution permits a State to be sued by a private party without its consent in the courts of a different State." *Hyatt III*, 139 S. Ct. at 1490; *accord id.* at 1499-1500 (stating, "the question here is whether the Federal Constitution *requires* each State to grant its sister States immunity, or whether the

_____

resolving whether the Tort Act applied in a suit involving Pennsylvania residents riding a NJ Transit train when it derailed in New Jersey. *Astorino v. N.J. Transit Corp.*, 912 A.2d 308, 309 (Pa. Super. 2006). NJ Transit asserted that it was immune from being sued in Pennsylvania under the Tort Act. *Id.* at 310. The trial court agreed and dismissed the case for lack of jurisdiction. *Id.* The *Astorino* Court affirmed, reasoning that it would exercise comity to recognize the Tort Act and that Pennsylvania state courts lacked jurisdiction as New Jersey was immune from suit. *Id.*

Constitution instead *permits* a State to grant or deny its sister States immunity as it chooses," *i.e.*, comity. (Breyer, J., dissenting) (emphases in original)). In other words, when private parties have sued NJ Transit, a New Jersey sovereign agency, in Pennsylvania state courts, the issue is whether Pennsylvania *must* recognize, or can it *choose* not to recognize, NJ Transit's sovereign immunity. *See id.* at 1490; *accord id.* at 1499-1500.

The *Hyatt III* Court explained that each "State's equal dignity and sovereignty under the Constitution implies certain constitutional limitations on the sovereignty of all of its sister States." *Id.* at 1497 (cleaned up). "One such limitation is the inability of one State to hale another into its courts without the latter's consent. The Constitution does not merely allow States to afford each other immunity as a matter of comity; it embeds interstate sovereign immunity within the constitutional design." *Id.*[15] In other words, the U.S. "Constitution implicitly strips States of any power they once had to refuse each other sovereign immunity[.]" *Id.* at 1498.[16] Instead of each state exercising its *discretion* on whether to recognize a sister state's sovereign immunity, each state was now *obligated* to recognize the other's sovereign immunity. *Id.* at 1492 (holding that "States retain their sovereign immunity from private suits brought in the courts of other States"), 1498.

Subsequently, numerous courts have dismissed suits based on *Hyatt III*.

---

[15] In contrast, as noted herein, prior to *Hyatt III*, "States maintained sovereign immunity vis-à-vis each other in the same way that foreign nations do, meaning that immunity is available only if the forum State voluntarily decides to respect the dignity of the defendant State as a matter of *comity*." *Hyatt III*, 139 S. Ct. at 1492 (cleaned up and emphasis added).

[16] *Accord Farmer v. Troy Univ.*, 879 S.E.2d 124, 126 (N.C. 2022) (explaining that before *Hyatt III*, "the rule was that States were allowed, but not constitutionally required, to extend sovereign immunity to sister States as a matter of comity"); *Belfand*, 148 N.Y.S.3d at 463 (stating that *Hyatt III* "holds that a state may be sued by a private citizen in a sister state only when it has consented to such suits"). *Contra Galette*, 293 A.3d at 654-56 (applying comity to reject NJ Transit's status as an arm of the state).

For example, in *State v. Great Lakes Minerals, LLC*, 597 S.W.3d 169 (Ky. 2019) (*Minerals*), the Kentucky Supreme Court held that an Ohio agency and an Ohio public official, in his official capacity, were entitled to sovereign immunity. *Minerals*, 597 S.W.3d at 171-73 (relying on *Hyatt III*). In *Minerals*, a Kentucky company sued Ohio and Ohio's Tax Commissioner in Kentucky state court. *Id.* at 170. Both Ohio and the Tax Commissioner invoked sovereign immunity, with the latter invoking immunity both in his official capacity and personal capacity. *Id.* The *Minerals* Court agreed that Ohio and the Tax Commissioner in his official capacity were both entitled to sovereign immunity based on the *Hyatt III* reasoning. *Id.* at 171-73.[17]

Similarly, in *Farmer*, the North Carolina Supreme Court recognized that under *Hyatt III*, an Alabama defendant had sovereign immunity per Alabama law. *Farmer*, 879 S.E.2d at 128. In *Farmer*, a North Carolina plaintiff sued an Alabama university in North Carolina state court. *Id.* at 125. The Alabama university invoked sovereign immunity based on an Alabama law that Alabama's universities have sovereign immunity. *Id.* at 128. The North Carolina Supreme Court recognized that Alabama law because under *Hyatt III*, "the United States Constitution does not simply permit a State to grant its sister States immunity from suit but requires it." *Id. Contra Galette*, 293 A.3d at 654-56 (rejecting New Jersey jurisprudence that NJ Transit is an arm of the state). Thus, the *Farmer* Court held that the Alabama

---

[17] With respect to the Ohio Tax Commissioner in his official capacity, the *Minerals* Court relied on U.S. Supreme Court precedent that a suit against a public official in an official capacity is identical to a suit against the state. *Minerals*, 597 S.W.3d at 173 (discussing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). The *Minerals* Court next examined whether the Tax Commissioner could still be sued in his personal capacity in Kentucky. *Id.* The Kentucky Supreme Court explained that it would have to interpret Ohio law to resolve whether the Tax Commissioner was entitled to common law immunity. *Id.* at 173-74. The *Minerals* Court applied principles of comity, held that "Ohio's state courts are better suited to efficiently evaluate and apply Ohio law to this issue," and dismissed the Tax Commissioner in his personal capacity. *Id.*

14

university was "entitled to sovereign immunity from suit without its consent in the state courts of every state in the country." *Farmer*, 879 S.E.2d at 128 (citation omitted).[18] In sum, in relevant part, neither Supreme Court exercised comity in deciding whether to accept the defendant's sovereign immunity status.[19]

Instantly, like in *Hyatt III*, *Minerals*, and *Farmer*, Plaintiffs have sued a New Jersey agency in Pennsylvania state court. *Cf. Hyatt III*, 139 S. Ct. at 1491; *Minerals*, 597 S.W.3d at 170; *Farmer*, 879 S.E.2d at 125. Similar to (1) the California agency that invoked sovereign immunity under California law in *Hyatt III*, and (2) the Alabama entity subject to Alabama law in *Farmer*, NJ Transit has invoked sovereign immunity under the Tort Act. *See Hyatt III*, 139 S. Ct. at 1491; *Farmer*, 879 S.E.2d at 128. Under pre-*Hyatt III* caselaw, Pennsylvania would have applied comity principles in deciding whether to recognize NJ Transit's sovereign status. *See, e.g.*, *Flamer*, 607 A.2d at 263-64; *Astorino*, 912 A.2d at 310; *Laconis*, 583 A.2d at 1222-23. Following *Hyatt III*, Pennsylvania no longer has the option of exercising comity and *must* recognize New Jersey's sovereign immunity, which includes NJ Transit. *See Hyatt III*, 139 S. Ct. at 1492, 1498; *Minerals*, 597 S.W.3d at 171-73

---

[18] The *Farmer* Court next considered whether the Alabama university explicitly waived its sovereign immunity when it registered as a nonprofit corporation under North Carolina law. *Farmer*, 879 S.E.2d at 128. The applicable North Carolina statute provided that when the university registered as a nonprofit corporation, the university consented to be sued in North Carolina state courts. *Id.* Thus, the *Farmer* Court recognized the Alabama university's sovereign immunity as an arm of the state, but that the university waived sovereign immunity. *Id.* at 129-30.

[19] We note that the *Farmer* Court did not consider whether to apply comity before recognizing the Alabama law bestowing sovereign immunity to its universities. *See also Hyatt II*, 578 U.S. at 179 (reiterating its rejection of "a complex balancing-of-interests approach to conflicts of law under the Full Faith and Credit Clause" in resolving whether to respect another state's statutorily-imposed sovereign immunity (cleaned up)); *Alden*, 527 U.S. at 751-52 (explaining that the United States—a sovereign—cannot abrogate the sovereign immunity of a state—a sovereign—in federal courts). *But see Galette*, 293 A.3d at 654-56. Although a state law was not at issue in *Minerals*, the Kentucky Supreme Court similarly did not apply comity in deciding whether Ohio could invoke sovereign immunity. *But see id.*

(recognizing Ohio's sovereign immunity); *Farmer*, 879 S.E.2d at 128 (acknowledging Alabama's sovereign immunity). *But see Galette*, 293 A.3d at 654-56.

We add that Plaintiffs erroneously argue that Pennsylvania is the proper jurisdiction because no Pennsylvania statute bars NJ Transit from being sued in Pennsylvania. The *Hyatt III* Court, however, rejected a similar argument. *See Hyatt III*, 139 S. Ct. at 1498-99 (explaining that because interstate sovereign immunity is inherent in the U.S. Constitution, it is "inappropriate for state law to control" (citation omitted)). Plaintiffs also misconstrue sovereign immunity as merely permitting NJ Transit to invoke, in Pennsylvania court, any immunities it would have in New Jersey court. Absent NJ Transit's consent, or some other exception not before this Court, NJ Transit cannot be sued in Pennsylvania state courts. *See id.* at 1497; *Brooks*, 259 A.3d at 374.[20] Accordingly, bound by U.S. Supreme Court precedent, we hold that Pennsylvania must also recognize NJ Transit's sovereign immunity. *See Hyatt III*, 139 S. Ct. at 1492; *NASDAQ*, 52 A.3d at 303.[21] We next address whether NJ Transit waived sovereign immunity.

---

[20] *See also Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 395-96 (3d Cir. 2012) (holding that absent the sovereign's express, unambiguous waiver of sovereign immunity, a court lacks subject matter jurisdiction and that "consent alone gives jurisdiction to adjudge against a sovereign. Absent that consent, the attempted exercise of judicial power is void" (cleaned up)).

[21] It would appear to follow that if one state has enacted a statute immunizing its agency— much like California did with its agency in *Hyatt III*—then a sister state no longer has the option of exercising comity, as Nevada did in *Hyatt I* and *II*. Rather, Nevada is now obligated to recognize the sovereign immunity of the California agency. *Hyatt III*, 139 S. Ct. at 1492, 1498. In so holding, the High Court did not analyze California or Nevada law in resolving whether to recognize the California agency's sovereign immunity. *See id. Compare Galette*, 293 A.3d at 654-56 (rejecting New Jersey law and applying Pennsylvania law in determining whether NJ Transit was an arm of New Jersey), *with cf. Hyatt III*, 139 S. Ct. at 1498 (noting that it "is not rational to suppose that the sovereign power should be dragged before a court"). In any event, Plaintiffs concede that NJ Transit is a sovereign agency. Resp. to Prelim. Objs. ¶ 9.

## C. Waiver of Sovereign Immunity Under the Tort Act

Third, NJ Transit maintains that it has not waived its sovereign immunity. NJ Transit begins by discussing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234 (1985), for the proposition that in order to waive sovereign immunity, a state must explicitly specify its intention to be sued in federal court. NJ Transit's Br. at 36. Per NJ Transit, because the constitutional clause in *Scanlon* was silent about the state's willingness to be sued in federal court, the High Court refused to hold that the state waived sovereign immunity. *Id.* NJ Transit analogizes to *Scanlon*, reasoning that because the Tort Act is similarly silent about New Jersey public entities being sued outside of New Jersey, NJ Transit has not waived sovereign immunity. *Id.* at 37-38 (discussing § 59:2-2 of the Tort Act, which we quote *infra*).

Plaintiffs counter that *Scanlon* is inapt because the instant case is not a federal suit. Pls.' Br. at 17. They argue that under N.J.S.A. § 59:2-2, public entities are liable for negligence to the same extent as a private person would be. *Id.* at 18. Plaintiffs summarily conclude that because a NJ Transit bus accident "is an exception to state sovereign immunity," "there is clearly no" immunity here. *Id.* at 18-19. Plaintiffs similarly reason that if this Court accepted NJ Transit's argument, then NJ Transit could never be sued in "any court at all for an accident that occurred in Philadelphia." *Id.* at 19. Plaintiffs thus maintain that sovereign immunity does not prevent NJ Transit from being sued in Pennsylvania. *Id.* at 20.[22]

---

[22] Plaintiffs tersely construe sovereign immunity as granting NJ Transit the same immunities in Pennsylvania that NJ Transit would have in New Jersey. Pls.' Br. at 20. Plaintiffs also concisely argue that they could not sue in New Jersey "because there is no basis to sue [SEPTA] in New Jersey for an accident that occurred in Philadelphia." *Id.* at 21. Further, Plaintiffs curtly claim they could not file two separate complaints under New Jersey's "Entire Controversy doctrine," but Plaintiffs did not explain the doctrine. *Id.* In reply, NJ Transit reiterates that under the Tort Act, it can be sued in New Jersey. NJ Transit's Reply Br. at 16-17. NJ Transit also retorts that because SEPTA is not a public entity under Pennsylvania law, Plaintiffs could have sued SEPTA in New Jersey. *Id.* at 17-19.

New Jersey's Tort Act states that it is "the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein." N.J.S.A. § 59:1-2; *see generally Melmark*, 206 A.3d at 1105. "Any liability of a public entity established by this act is subject to any immunity of the public entity and is subject to any defenses that would be available to the public entity if it were a private person." N.J.S.A. § 59:2-1(b); *see id.* § 59:2-2(a).[23] The term "any immunity" includes sovereign immunity. *Rochinsky v. State*, 541 A.2d 1029, 1034 (N.J. 1988) (explaining that the Tort Act preserved "common-law and statutory immunities *not* contained in the Act" itself, including sovereign immunity (emphasis in original)).[24]

With respect to Plaintiffs' cursory arguments, Plaintiffs misconstrue the sovereign immunity doctrine. *See Hyatt III*, 139 S. Ct. at 1492 (explaining that states are immune from private suits filed in the courts of other states); *see also Brooks*, 259 A.3d at 374 (explaining sovereign immunity is an immunity from suit and not a defense to liability); *Maison*, 245 A.3d at 547 (explaining that the Tort Act, "in the *absence* of an applicable *immunity*, generally contemplates a *symmetry* of treatment between government actors and private actors" for liability (emphases added)). Further, SEPTA has been sued in New Jersey. *See Triffin v. S.E. Pa. Transp. Auth.*, 225 A.3d 152, 155 (N.J. Super. Ct. App. Div. 2020) (reasoning that because SEPTA waived personal jurisdiction, "there is no bar–constitutional or otherwise–to a court's adjudication of a claim against a non-resident defendant"). Finally, Plaintiffs' skeletal argument invoking the Entire Controversy doctrine fails for lack of development. *See Diamond v. Chulay*, 811 F. Supp. 1321, 1335 (N.D. Ill. 1993).

[23] Section 59:2-2(a) states, "A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. § 59:2-2(a).

[24] *Accord Stewart v. New Jersey Tpk. Auth./Garden State Parkway*, 268 A.3d 346, 353 (N.J. 2022) (noting that the New Jersey Legislature passed the Tort Act after the New Jersey Supreme Court "abolished the common law doctrine of sovereign immunity"). "Tort claims under this act shall be heard by a judge sitting without a jury or a judge and jury where appropriate demand therefor is made in accordance with the rules governing the courts of the State of New Jersey." *Id.* § 59:9-1; *see also Mesgleski v. Oraboni*, 748 A.2d 1130, 1134 (N.J. Super. Ct. App. Div. 2000) (stating the "legislative goal of the [Tort] Act is to re-establish immunity for all governmental bodies within its definition of public entity. Immunity is all-inclusive within that definition except as otherwise provided by the [Tort] Act" (cleaned up)). In sum, under the Tort Act, a New Jersey

Instantly, Plaintiffs conceded that NJ Transit is a sovereign, public entity subject to the Tort Act. Resp. to Prelim. Objs. ¶ 9; *accord Maison*, 245 A.3d at 546. As a public entity, the Tort Act shields NJ Transit from liability subject to certain exceptions. *Maison*, 245 A.3d at 552; *Wright v. State*, 778 A.2d 443, 450 (N.J. 2001). The Tort Act, however, does not explicitly address or otherwise express New Jersey's consent to be sued *outside* of New Jersey, *i.e.*, there is no waiver of sovereign immunity. *See generally* N.J.S.A. §§ 59:1-1 to :12-3.

But other courts have addressed the issue. To provide some context for those cases, we briefly discuss *Scanlon*. In *Scanlon*, the High Court addressed whether a state constitution clause waived the state's Eleventh Amendment immunity to being sued in federal court. *Scanlon*, 473 U.S. at 241 (interpreting constitutional clause stating, "[s]uits may be brought against the State in such manner and in such courts as shall be directed by law"). The *Scanlon* Court stated that "in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court*." *Id.* (emphasis in original). Because the clause did not indicate the state was open to being sued in federal court, the High Court refused to hold that the state waived immunity. *Id.*[25]

Although the *Scanlon* Court did not address the Tort Act, New York

___

public entity may negate liability by establishing immunity. *Maison*, 245 A.3d at 552; *Rochinsky*, 541 A.2d at 1033-34.

[25] *See also Hyatt v. Cnty. of Passaic*, 340 Fed. App'x 833 (3d. Cir. 2009) (*Passaic*). In New Jersey, plaintiffs sued Passaic County, New Jersey, among other agencies, in federal court. *Id.* at 835. The defendants invoked Eleventh Amendment immunity, the district court agreed, and the plaintiffs appealed. *Id.* at 836. The plaintiffs argued that the Tort Act "waived Eleventh Amendment immunity." *Id.* at 837. The Third Circuit summarily held that the Tort Act "allows suits against public entities and their employees in state courts, [but] does not expressly consent to suit in federal courts and thus is not an Eleventh Amendment waiver." *Id.* (citing N.J.S.A. § 59:2-2(a)).

courts have addressed it. In *Belfand*, a New York plaintiff was in an accident with a NJ Transit bus in New York. *Belfand*, 148 N.Y.S.3d at 459. The plaintiff sued NJ Transit in New York, and NJ Transit invoked sovereign immunity. *Id.* On appeal, the *Belfand* Court noted that the Tort Act provided no consent to suits in federal court. *Id.* at 464 (citing cases). The *Belfand* Court reasoned that if the Tort Act was insufficient to establish NJ Transit's consent to be sued in federal court, then it was "equally insufficient" to establish New Jersey's consent to "suits in a sister state." *Id.* at 465. The Court therefore held, "New Jersey's consent to suits in its state courts under its [Tort Act] is not an express consent to suit in courts of a sister state and therefore fails to satisfy [*Hyatt III*'s] constitutional demand. The statute is not a basis for a finding that [NJ Transit] consented to this New York action." *Id.*[26]

Instantly, similar to *Scanlon*, and after reviewing the Tort Act, we also agree with the *Passaic* and *Belfand* Courts that the Tort Act contains no language in which New Jersey, *i.e.*, NJ Transit, explicitly consents to being sued outside of New Jersey. *See Scanlon*, 473 U.S. at 241; *Passaic*, 340 Fed. App'x at 837; *Belfand*, 148 N.Y.S.3d at 465; *see also Melmark*, 206 A.3d at 1105. Because NJ Transit invoked sovereign immunity in its preliminary objections, answer, and motion for judgment on the pleadings, we also disagree with the trial court's holding that NJ Transit waived sovereign immunity. *See* Trial Ct. Op. at 3. It follows that given NJ Transit did not consent to be sued in Pennsylvania courts, the trial court erred as a matter of law in overruling NJ Transit's preliminary objections and denying its motion for

---

[26] The *Belfand* Court, however, further held that NJ Transit had waived sovereign immunity by failing to timely invoke it. *Belfand*, 148 N.Y.S.3d at 467; *see also Taylor v. N.J. Transit Corp.*, 158 N.Y.S.3d 58, 59 (N.Y. App. Div. 2021); *Fetahu v. N.J. Transit Corp.*, 154 N.Y.S.3d 50, 51 (N.Y. App. Div. 2021); *Henry v. N.J. Transit Corp.*, 144 N.Y.S.3d 851 (N.Y. App. Div. 2021). Thus, the *Belfand* suit continued in New York. Plaintiffs have not suggested NJ Transit untimely raised sovereign immunity. We add that NJ Transit cited to *Belfand* before the trial court.

judgment on the pleadings. *See Farmer*, 879 S.E.2d at 125; *Minerals*, 597 S.W.3d at 171-73; *Sutton*, 220 A.3d at 1035 n.4; *Yanakos*, 218 A.3d at 1218 n.6.

## IV. CONCLUSION

In sum, we hold as follows. First, the orders at issue are appealable collateral orders. Second, the trial court erred because Pennsylvania must recognize NJ Transit's sovereign immunity under *Hyatt III*. Third, under the Tort Act, NJ Transit did not consent to be sued outside of New Jersey state courts. Accordingly, the trial court erred in overruling NJ Transit's preliminary objections and denying NJ Transit's motion for judgment on the pleadings. We reverse the orders at issue and remand with instructions to dismiss.

_____
LORI A. DUMAS, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lee Marshall and Pamela Fuller | : | CASES CONSOLIDATE |
| | : | |
| v. | : | No. 40 C.D. 2022 |
| | : | |
| Southeastern Pennsylvania Transportation Authority, New Jersey Transit and New Jersey Transit Corporation | : | |
| | : | |
| Appeal of: New Jersey Transit and New Jersey Transit Corporation | : | |
| | : | |
| New Jersey Transit and New Jersey Transit Corporation, | : | |
| Appellants | : | |
| v. | : | No. 157 C.D. 2022 |
| | : | |
| Lee Marshall, Pamela Fuller, and Southeastern Pennsylvania Transportation Authority | : | |

**O R D E R**

AND NOW, this 4th day of August, 2023, we REVERSE the June 24, 2021 order entered by the Court of Common Pleas of Philadelphia County (trial court), which overruled the preliminary objections filed by New Jersey Transit and New Jersey Transit Corporation (collectively, NJ Transit).  We REVERSE the trial court's January 11, 2022 order denying NJ Transit's motion for judgment on the pleadings.  We REMAND with instructions to dismiss the case.

_____
LORI A. DUMAS, Judge